**UNITED STATES of America**

v.

**Samuel Todd TAYLOR.**

**No. 3:96–CR–015 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

June 20, 1996.

Douglas M. Grimes, Gary, IN, for defendant.

William T. Grimmer, Assistant U.S. Atty. Office of the United States Attorney, South Bend, IN, for U.S.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

This cause is now before the court pursuant to the following motions: (1) the defendant's motion to dismiss the indictment; (2) the defendant's motion to quash the search warrant and suppress evidence; and (3) the Government's motion in limine. This memorandum will follow up on the proceedings held in open court in South Bend, Indiana, on June 11, 1996, and deal with the issues that were there presented.

## I. PROCEDURAL HISTORY

On April 4, 1996, the defendant was charged in a two-count indictment returned by a grand jury in this district. Count One of the indictment charges the defendant with knowingly and intentionally possessing with intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count Two of the indictment charges the defendant with knowingly possessing firearms in or affecting interstate commerce after having served a prior prison sentence exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The defendant is currently being detained in prison pending trial pursuant to this court's order of May 20, 1996, which upheld the detention order signed by United States Magistrate Judge Robin D. Pierce on April 17, 1996.

## II. MOTION TO DISMISS THE INDICTMENT

The defendant filed a motion to dismiss the indictment on June 3, 1996. In this motion, the defendant raises two grounds challenging the propriety of the grand jury's decision to return the indictment. First, he claims that the grand jury was presented with insufficient legal evidence upon which to base its decision to indict the defendant. Second, the defendant contends that the evidence and testimony upon which the indictment was based consisted purely of hearsay and suspicion and lacked any legal proof. In support of the motion, the defendant offers this court the affidavit of defense counsel, in which defense counsel claims that the prosecutor presented prejudicial, hearsay statements to the grand jury in order to obtain the indictment against the defendant. Thus, the defendant requests that this court dismiss the indictment or, in the alternative, grant the defendant leave to inspect the grand jury minutes and records upon which the indictment is based.

The Government responded to the motion to dismiss the indictment on June 7, 1996. In its response, the Government argues that the indictment is valid on its face and that the defendant's claims are based merely upon speculation and unsupported allegations. Further, the Government argues that a presumption of regularity attaches to grand jury proceedings and that the defendant cannot meet his difficult burden to prove any irregularity under *United States v. Battista*, 646 F.2d 237, 242 (6th Cir.), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). Additionally, the Government contends that the presentation of hearsay evidence to the grand jury did not infect the proceedings since a grand jury may return an indictment based upon hearsay evidence. Thus, the Government requests that the court deny the defendant's motion to dismiss the indictment.

In open court on June 11, 1996, the Government submitted to the court and defense counsel copies of the transcript of the grand jury proceedings which related to the defendant. The defendant and defense counsel were provided the opportunity to review the grand jury transcript before arguments were heard on the motion to dismiss and the motion to quash the search warrant and suppress evidence. Subsequently, the Government filed a motion to seal the grand jury transcript, which this court granted on June 12, 1996.

The defendant seeks to dismiss the indictment due to alleged abuses in the grand jury proceedings. The court presumes that the defendant makes this motion pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure. Rule 12(b) permits any defense or objection "which is capable of determination without the trial of the general issues" to be raised by pretrial motion. The motion must be decided before trial "unless the court, for good cause, orders that it be deferred at the trial of the general issue or until after the verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected." FED. R.CRIM.P. 12(e).

A pretrial motion is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Yasak*, 884 F.2d 996, 1001 n. 3 (7th Cir.1989); *see also, United States v. Shortt Accountancy Corp.*, 785 F.2d 1448

(9th Cir.1986); *United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir.1977); *United States v. Jones,* 542 F.2d 661, 664 (6th Cir.1976). Rule 12(b) ensures that trials will be efficient and that the defendant will raise defenses and objections which are capable of determination without necessitating a "mini-trial" of the general issue before the actual trial on the merits. *United States v. Risk,* 843 F.2d 1059, 1061 (7th Cir.1988); *United States v. Griffin,* 765 F.2d 677, 681 (7th Cir.1985). A claim that is raised on a pretrial motion to dismiss must go to the jury if the claim is substantially intertwined with the evidence concerning the alleged offense. *United States v. Shriver,* 989 F.2d 898, 906 (7th Cir.1993). However, a motion requiring factual determinations may be decided before trial if a trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. *United States v. Covington,* 395 U.S. 57, 60, 89 S.Ct. 1559, 1560–61, 23 L.Ed.2d 94 (1969).

■ Recognizing the increasing dependency of grand juries on the United States Attorney to present to it such evidence as it needs for its performance of the function and to furnish it with controlling legal principles, federal courts have become more sensitive to allegations of governmental misconduct before the grand jury and have demonstrated greater willingness to curb prosecutorial abuse of such proceedings. *United States v. Udziela,* 671 F.2d 995, 998 (7th Cir.1982). However, when a grand jury indictment has been returned against a defendant, there is a strong presumption that the charge is brought in good faith—a defendant bears a heavy burden when seeking to show that a grand jury indictment was pursued by the government in bad faith. *Politte v. United States,* 852 F.2d 924, 929 (7th Cir.1988). Dismissal of an indictment is warranted if the defendant establishes an abuse of the grand jury process which affects a substantial right of the defendant or impugns the grand jury's integrity. *United States v. Peters,* 791 F.2d 1270, 1283 (7th Cir.1986). A defendant's unsupported speculation that the grand jury was presented with evidence insufficient to support an indictment will not overcome the presumption of regularity that attaches to grand jury proceedings. *See United States v. Lisinski,* 728 F.2d 887, 893 (7th Cir.), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984).

■ In this case, the grand jury was presented with the testimony of one live witness as well as several written exhibits. The defendant argues that the use of such hearsay testimony affected the regularity of the grand jury proceedings. However, the Government correctly states that, with the exception of the rules relating to evidentiary privileges, the Federal Rules of Evidence do not apply to grand jury proceedings. FED. R.EVID. 1101(d)(2). Thus, it is permissible for a grand jury to return an indictment based partly or solely on hearsay evidence. *United States v. Brown,* 574 F.2d 1274, 1275–76 (5th Cir.1978). *See also, United States v. Kington,* 801 F.2d 733, 737 (5th Cir.1986); *United States v. Kozerski,* 518 F.Supp. 1082, 1089 (D.N.H.1981).[1]

■ Further, the Supreme Court of the United States has held that an indictment valid on its face should not be subject to challenge on the ground that the grand jury acted on the basis of inadequate or insufficient evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); *see also, United States v. Roth,* 777 F.2d 1200, 1202 (7th Cir.1985). The grand jury may draw its information from a wide variety of sources and "the validity of an indictment is not affected by the character of the evidence considered." *United States v. Malsom,* 779 F.2d 1228, 1241 (7th Cir.1985) (citing *United States v. Wilson,* 732 F.2d 404, 409 (5th Cir.1984)). The defendant is protected from the "one-sidedness" of the grand jury since he is entitled to the full protections of the Fifth Amendment at a trial on the merits and at such time is "permitted to expose all of the facts bearing upon his guilt or innocence."

---

1. While this court is not required to follow the appellate decisions of other circuits blindly, these decisions must be given due respect because the Seventh Circuit has yet to rule on this issue. *See, Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987).

*United States v. Chanen,* 549 F.2d 1306, 1311 (9th Cir.1977).

Upon review of the transcript of the grand jury proceedings in light of the defendant's arguments, the court finds that the defendant falls short of establishing that a substantial right was violated in the grand jury proceeding or that the evidence presented to the grand jury impugned its integrity. The evidence upon which the grand jury based its decision to return the indictment against the defendant, though based primarily on hearsay, was sufficient under applicable case law. Therefore, the court finds that the defendant has not provided sufficient evidence in which to rebut the strong presumption that the indictment was returned in good faith. Thus, the court now **DENIES** the defendant's motion to dismiss the indictment, and the defendant is granted leave to renew said motion at least ten (10) days in advance of trial.

### III. MOTION TO QUASH THE SEARCH WARRANT AND SUPPRESS EVIDENCE

In addition to the motion to dismiss the indictment, the defendant filed a motion to quash the search warrant and suppress evidence ("motion to suppress") on June 3, 1996. The facts relevant to the motion to suppress are as follows.

On June 3, 1995, officers with the City of South Bend Police Department and other local agencies executed a search warrant ("warrant") that was issued by the Honorable William Means of the Superior Court of St. Joseph County, Indiana. The warrant was issued based upon the affidavit of James Dennin, an officer with the City of South Bend Police Department ("warrant affidavit"). The warrant affidavit states that the affiant had good cause to believe that the following items could be found at the address of 1614 South Fellows Street, located in South Bend, Indiana ("the address"): crack-cocaine; materials used for packaging and distributing crack-cocaine paraphernalia; ledgers of narcotics transactions; records showing evidence of domain and control; one twenty-dollar bill of United States Currency bearing a particular serial number; and other United States Currency. The affiant believed that any and all property listed in the warrant affidavit as items which could be found at the address were related to narcotics trafficking.

In the warrant affidavit, Officer Dennin listed his reasons and grounds for belief that there existed probable cause for searching the address and the defendant. First, he stated that he has been a sworn police officer with the City of South Bend Police Department for nine and a half years and was then assigned to the Metro Special Operations Section ("MSOS") as a Narcotic Investigator. He recited that he had received information from both known and anonymous sources that crack-cocaine had been and was at that time being sold out of the address by the defendant. He claimed that the information which he had received was verified by surveillance of the MSOS and indicated that activities were occurring at the address which were typical of the traffic associated with a house where illegal drugs are sold. He also indicated that he had received information from a confidential informant ("CI") that the CI could go to the address and purchase crack-cocaine from the defendant. Further, the affiant stated that he was informed by the CI, who had known the defendant for several years, that the defendant was known to sell crack-cocaine.

Officer Dennin then stated that he had met with a reliable CI within forty-eight (48) hours of preparing the affidavit for the purposes of making a "controlled purchase" of crack-cocaine from the address. He declared that the CI was reliable since the CI had supplied him or others at the MSOS with prior information that narcotics had been sold out the address as well as other locations in South Bend. The affiant stated that such information had been corroborated by the police intelligence and information received by other informants. The affiant then detailed the specific activities associated with the controlled purchase, which resulted in the CI's purchase of one white rock-like substance from the defendant with a "marked" twenty-dollar bill which the affiant had given to the CI before the sale. The affiant claimed that he returned to the MSOS office

with the substance that the CI had purchased. Subsequently, the affiant alleged that the substance tested positive for the presence of cocaine.

Relying upon the warrant affidavit, Judge Means found that probable cause existed to believe that narcotics and narcotic-related materials were present at the address. Therefore, Judge Means issued the search warrant, allowing for a search to be conducted in each and every room of the address. On June 5, 1995, officers with the South Bend Police Department searched the address, finding and seizing twenty-eight (28) separate items, each of which was listed on the "Return of Search Warrant" and presented to Judge Means. Among the items seized were: (a) evidence that the address was the domain of the defendant and another individual; (b) a wallet containing the defendant's driver's license and other identification; (c) several weapons, including a semi-automatic handgun and a shotgun; (d) a clear plastic bag containing a yellowish-white, rock-like substance; and (e) another small amount of a rock-like substance.

The defendant has filed the present motion to quash the search warrant seeking to suppress all evidence seized by the police in the June 5, 1995, search of the address. In the motion to suppress, the defendant raises the following arguments in support of his contention that Judge Means incorrectly found sufficient probable cause for the issuance of the warrant.[2] The defendant first claims that Officer Dennin's affidavit was

knowingly and intentionally based on misstated facts with a reckless disregard for the truth. Thus, he contends that the affidavit was insufficient as a matter of law. Second, he claims that the affidavit states on its face that the affiant relied on information which dates back to 1991, thus rendering the affidavit stale due to the excessive lapse of time. Third, the defendant claims that the affidavit was flawed since it was based entirely on hearsay conclusions and not on the affiant's personal knowledge. Fourth, he alleges that the police officers who executed the search violated the terms of the warrant by conducting a general exploratory search of the address in violation of the Fourth Amendment to the United States Constitution.[3]

## A. PROBABLE CAUSE

As a preliminary matter, the court must discuss the issue of probable cause and the standard of review to be applied in examining whether sufficient probable cause existed with regard to the issuance of the search warrant in this case. Probable cause is a concept unique to the Constitution of the United States and its Fourth Amendment. The origins of probable cause are basically found in the brain and spirit of James Madison and Madison's reaction to the sorry experience that the British colonies in North America had endured with regard to general warrants and writs of the King of England in the mid–1700's. The high watermark in colonial opposition to such warrants

2. It is of no small moment to this court that both the motion to suppress and the offer of proof filed in support of said motion are unverified. Further, it must be noted that the defendant raised additional arguments in support of the motion to suppress during oral argument that do not appear on the face of the motion filed on June 3, 1996.

3. The record in this case also contains a number of references indicating that an issue of governmental misconduct may emerge. There is case authority that governmental misconduct *might* violate the Due Process Clause of the Fifth or Fourteenth Amendments. *Hampton v. United States,* 425 U.S. 484, 490, 496, 96 S.Ct. 1646, 1650, 1653 (1976); *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978). However, when review-

ing an issue of governmental misconduct, it is must be noted that the doctrine of "outrageous government misconduct" is no longer recognized by the Seventh Circuit. *See United States v. Boyd,* 55 F.3d 239, 241 (7th Cir.1995), and *United States v. Engel,* 15 F.3d 623, 631 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). Further, the Seventh Circuit has ruled in no uncertain terms that the issue of governmental misconduct is for the court and not the jury to decide. *United States v. Shoffner,* 826 F.2d 619, 626 n. 9 (7th Cir.1987); *United States v. Swiatek,* 819 F.2d 721, 726 (7th Cir.1987). The court does not intend here to prejudge any issue of governmental misconduct that may be raised in this case. However, should such an issue arise, it must be presented to this court for ruling outside the presence of the jury at trial.

and writs of the King was the great speech of colonial lawyer James Otis Jr. in a Boston courtroom during the 1760's. James Madison was acutely aware of Otis's speech and the colonial experience. Hence, he drafted the Fourth Amendment to blunt the hard edges of governmental search authority. A basic requirement of the Fourth Amendment is a particularized search warrant issued on a sworn statement. Such warrants are clearly favored in Fourth Amendment jurisprudence.

 It is also elementary that the facts necessary to demonstrate probable cause are frozen to the time before or at the time of the prospective search. Generally, the fruits of a search cannot be used to bolster an argument for the finding of probable cause. It is generally not permissible for a prosecuting authority to use the fruits of a search to show pre-existing probable cause. In the present case, the arguments regarding what items were or were not found in the search is largely irrelevant to the issue of probable cause. It may well be that at trial, the fruits of the search or the lack thereof may well be highly relevant to the cases of the Government or the defense. However, whether there was sufficient probable cause to justify the issuance of the search warrant is an issue for the court and not a jury to decide.

 The Supreme Court of the United States in the case of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2319–20, 76 L.Ed.2d 527 (1983), set forth the appropriate standard of review with respect to the issuance of search warrants. In *Gates,* the Supreme Court abandoned the two-pronged *Aguilar–Spinelli* approach[4] to the issuance of warrants in favor of a totality-of-the-circumstances analysis. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2317, 2332. The Court prescribed that the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The Court also held that the

duty of any court reviewing a decision to issue a warrant is to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332. Thus, this court will first address each issue raised by the defendant and then discuss the merits of the defendant's arguments under *Illinois v. Gates.*

## B. HEARING PURSUANT TO *FRANKS v. DELAWARE*

The defendant's first claim is that the warrant affidavit was based upon misstatements of fact which were knowingly and intentionally made in reckless disregard of the truth. Such a claim requires the court to analyze the search warrant and supporting warrant affidavit in light of the standards announced by the Supreme Court of the United States in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

 The defendant seeks to challenge the truthfulness of factual statements made in the affidavit to support the warrant. In *Franks,* the Supreme Court reversed prior precedent which held that under no circumstances could a defendant challenge the veracity of a sworn statement used by police to procure a search warrant. The Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as

---

4. See *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v.*

*United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for further reference.

if probable cause was lacking on the face of the affidavit.

*Id.* at 155, 98 S.Ct. at 2676. The Court provided the standards to be applied by lower courts in determining whether the defendant has met the necessary burden to establish a substantial preliminary showing of falsity:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171–72, 98 S.Ct. at 2684.

To satisfy his burden of making a substantial preliminary showing of falsity, the defendant in the present action filed his "Offer of Proof" in open court on June 11, 1996. In the Offer of Proof, which consists of an unverified, three-page statement signed by defense counsel and oral testimony not given under oath, the defendant presents the following arguments to satisfy his preliminary burden under *Franks.* First, the defendant claims that the "controlled purchase" described by the affiant in the warrant affidavit did not in fact occur. Second, the defendant contends that the statements contained in warrant affidavit were not within the affiant's personal knowledge. Third, he alleges that

the statements in the warrant affidavit with reference to the confidential informants were misleading because the affidavit was unclear whether the information received by the affiant resulted from discussions with one or multiple informants. Fourth, the defendant claims that the affiant deliberately misled the issuing judge when he relied upon information from the CI which participated in the "controlled purchase" without claiming that he possessed personal knowledge of the CI's reliability. Thus, it is the defendant's argument that had Judge Means possessed knowledge (1) that the "controlled purchase" did not in fact occur; (2) that the warrant affidavit was not based upon the affiant's personal knowledge; (3) that the affiant misled him with regard to the number of informants and the information received therefrom; and/or (4) that the affiant misled him as to the reliability of the CI that participated in the "controlled purchase," Judge Means would not have found that sufficient probable cause existed to issue the search warrant.[5]

The Government argues that the defendant's Offer of Proof falls "woefully short" under the *Franks* standard. Because the defendant must make a "substantial preliminary showing" of falsity under *Franks, supra,* the Government contends that the defendant's unverified motion to suppress and Offer of Proof in support thereof raise only speculative arguments which are not supported by any evidence. Therefore, the Government argues that the defendant has not met his preliminary burden under *Franks,* and no evidentiary hearing on the merits of the search warrant and the warrant affidavit is required in this case.

In *Franks,* the Supreme Court made clear that either affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Id.* at 171, 98 S.Ct. at 2684. Although the defendant admits that his preliminary showing is not supported by any affidavits or other testimony under oath, he nonetheless believes that he has

---

5. The court acknowledges that the defendant raised additional arguments in his Offer of Proof during the June 11, 1996, hearing. However, the court finds that those arguments are not relevant to the court's decision on the motion to suppress and, therefore, will not be addressed in this memorandum and order.

offered sufficient evidence to satisfy his preliminary burden under *Franks*. The defendant argues that the Supreme Court's holding in *Franks* does not require a defendant to offer verified evidence in order for him to make his preliminary showing of falsity. Further, the defendant directs the court's attention to two decisions from the United States Court of Appeals for the Ninth Circuit to support his claims of falsity—*United States v. Stanert*, 762 F.2d 775 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir.1985), and *United States v. Chesher*, 678 F.2d 1353 (9th Cir.1982).

The defendant raises the *Stanert* and *Chesher* decisions in support of his argument that the misleading and false nature of the affiant's statements in the warrant affidavit, along with the staleness of the affidavit's information, are enough to require a hearing under *Franks*. In *Stanert*, the defendant challenged the sufficiency of the search warrant claiming that the affiant deliberately attempted to mislead the issuing judge. The Ninth Circuit held that the use of deliberately falsified information is not the only way in which police officers can mislead an issuing judge when making a probable cause determination: by reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw and allow the judge to be misled in such a manner that "could denude the probable cause requirement of all real meaning." *Stanert*, 762 F.2d at 781. In *Chesher*, the affiant relied on information provided by informants which was as much as eight years old. The Ninth Circuit concluded that the defendant's affidavit in conjunction with the government's concession that an agent's statement was false and the staleness of the information relied upon by the affiant constituted the required "substantial preliminary showing" of deliberate or reckless falsity to warrant a *Franks* hearing. *Chesher*, 678 F.2d at 1353.

Placing these decisions aside for the moment, the first issue that this court must decide is whether the defendant has provided the court with an appropriate "offer of proof" sufficient to warrant a *Franks* hearing. As stated above, the Supreme Court clearly outlined in *Franks* the requirements that the

defendant must satisfy to mandate an evidentiary hearing on the sufficiency of the search warrant. First, the defendant must make allegations, accompanied by an offer of proof, that the affiant made statements which are deliberately false or that the statements were made with reckless disregard for the truth. *Id.* at 171, 98 S.Ct. at 2684. Second, the allegations should specifically pinpoint the portion of the warrant affidavit claimed to be false and should be accompanied by a statement of supporting reasons. *Id.* Third, the Court stated that "either affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

In this case, the defendant has made allegations that the affiant, Officer Dennin, intentionally made false statements in his warrant affidavit in an attempt to mislead the judge issuing the search warrant. Further, in his offer of proof the defendant specifically points to the paragraphs of the warrant affidavit which he alleges are false. Thus, the sole remaining issue is whether the defendant has offered this court sufficient evidence of falsity to mandate an evidentiary hearing under *Franks*. The defendant's offer of proof consists merely of a three-page, unverified statement signed by defense counsel. The defendant contends that the *Franks* decision does not specifically require a defendant to file verified affidavits or sworn testimony to satisfy his burden of making a preliminary substantial showing that the affiant recklessly or intentionally made false statements in the warrant affidavit.

The United States Court of Appeals for the Seventh Circuit has not specifically addressed the issue of whether the defendant must file verified support for his allegations of falsity to mandate an evidentiary hearing under *Franks*. However, several other circuits of the United States Court of Appeals have held that the defendant's motion and allegations must be supported with affidavits or other sworn testimony in order to meet the "offer of proof" requirement of *Franks*. The First Circuit has held that it is not error for a district court to find that a defendant does not meet his burden under *Franks*

when the defendant offers only a patently false affidavit containing hearsay statements and a tape recording in support of his allegations of falsity. *United States v. Parcel of Land and Residence Located Thereon at 5 Bell Rock Road, Freetown, Massachusetts,* 896 F.2d 605, 609 (1st Cir.1990).

The Third Circuit has held that a defendant's offer of proof which contains only a conclusory statement alleging falsity does not satisfy the "offer of proof" requirement of *Franks.* *United States v. Harvey,* 2 F.3d 1318, 1328 (3d Cir.1993). Further, the Fifth Circuit in *Williams v. Kunze,* 806 F.2d 594 (5th Cir.1986), similarly held that a *Franks* hearing is not mandated where the record is devoid of a sworn statement supporting the defendant's allegations of falsity. *Id.* at 599. The Tenth Circuit has stated that a defendant's allegations of falsity alone do not meet the preliminary burden placed on the defendant under *Franks.* *United States v. Ross,* 920 F.2d 1530, 1533 (10th Cir.1990). The Ninth Circuit has even held that the production of a detailed offer of proof, which includes affidavits, in support of the allegations of falsity is one of the five requirements that a defendant must fulfill to warrant a *Franks* hearing. *United States v. Di Cesare,* 765 F.2d 890, 894 (9th Cir.1985). More recently, the Ninth Circuit has stated that a defendant's failure to offer an affidavit or sworn statement in support of allegations that a warrant affidavit was based upon deliberately false information is enough in itself to defeat a defendant's demand for an evidentiary hearing under *Franks.* *United States v. Ruddell,* 71 F.3d 331, 334 (9th Cir.1995).

The Seventh Circuit has addressed the issue of the sufficiency of a defendant's offer of proof in a number of decisions. *See United States v. Walker,* 25 F.3d 540, 544–45 (7th Cir.1994) (holding that the defendant's offer of proof which consisted only of a tape recording and a private investigator's affidavit did not satisfy the defendant's preliminary burden under *Franks* without the offering of other sworn testimony or reliable evidence); *United States v. Pace,* 898 F.2d 1218, 1225 (7th Cir.1990) (holding that the defendant's allegations that the warrant affidavit contained falsified information did not satisfy

*Franks* even though the defendant's offer of proof consisted of twenty-nine (29) affidavits); *United States v. Zambrana,* 841 F.2d 1320, 1334 (7th Cir.1988) (stating that the defendant's unverified assertions that an informant's testimony was unreliable falls short of satisfying the defendant's initial burden under *Franks*); *United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir.1987) (finding that the defendant's offer of proof which consisted only of a friend's affidavit and defense counsel's "say-so" did not satisfy the initial burden under *Franks*); *United States v. Radtke,* 799 F.2d 298, 310 (7th Cir.1986) (holding that the defendant's offer of the affiant's sworn testimony to establish falsity of the warrant affidavit did not amount to a substantial preliminary showing of falsity under *Franks*); *United States v. McDonald,* 723 F.2d 1288, 1293 (7th Cir.1983) (holding that the defendant must do more than produce a self-serving statement which refutes the warrant affidavit to overcome the warrant's presumption of validity).

In regard to the sufficiency of the defendant's offer of proof, the Ninth Circuit decisions in *Stanert* and *Chesher, supra,* do not aid the defendant. In *Stanert,* the Ninth Circuit found that the defendant had made a substantial preliminary showing of falsity to warrant a *Franks* hearing. *Stanert,* 762 F.2d at 780. However, the defendant in *Stanert* offered the court substantial evidence that the affiant had materially omitted several key facts in the warrant affidavit in order to mislead the judge issuing the search warrant. *Id.* In the present case, the defendant does not allege that the affiant omitted material facts in his affidavit; he claims instead that the affiant included statements in the warrant affidavit which were patently false and made with the intention of securing a search warrant in order to manufacture evidence against the defendant. In *Chesher,* the Ninth Circuit also found that the defendant had made a sufficient preliminary substantial showing of falsity to mandate a *Franks* hearing. *Chesher,* 678 F.2d at 1361. However, the court based its decision upon (a) the Government's concession that a government agent had provided false information that the affiant relied upon in the warrant affidavit; and (b) the fact that

the information upon which the affidavit was founded related to circumstances which had occurred as many as eight years before the warrant affidavit was prepared. A similar result is unwarranted in this case since the defendant's offer of proof falls far short of the offers of proof produced in *Stanert* and *Chesher.*

■ This court reads the language of Justice Blackmun's majority opinion in *Franks* as requiring a defendant's offer of proof to consist of verified affidavits or testimony of witnesses under oath to support any allegations of falsity. If the defendant does not provide the court with such verified support, then the defendant must present compelling reasons for the absence of such evidence. In this case, the defendant's only excuse for his failure to offer verified support for his allegations of falsity is that he does not believe that such support is necessary under *Franks*—an argument that this court does not find persuasive. Further, the defendant's offer of proof consists merely of a unverified, self-serving statement signed by defense counsel. The entire offer of proof amounts to nothing more than speculation and conjecture as it provides no support for its allegations. Thus, based upon his offer of proof and the arguments made at the hearing on the motion to suppress, the court finds that the defendant has failed to make the required substantial preliminary showing that the affiant, Officer Dennin, knowingly, intentionally or with reckless disregard for the truth falsified the warrant affidavit. Therefore, the defendant's motion to suppress as it relates to the holding of an evidentiary hearing under the mandates of *Franks v. Delaware* must be denied.

## C. STALENESS

In the motion to suppress, the defendant also attacks the validity of the search warrant on the basis that some of the information which was relied upon to establish probable cause occurred as far back in time as 1991. The defendant argues that the excessive lapse of time involved renders such information stale and thus, there was no probable cause at the time the warrant was issued for believing that the property to be seized was still concealed at the address.

■ It is fundamental that the law of probable cause has been developed in an attempt to prevent the issuance of a search warrant on the basis of vague and uncertain information. *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972). The Seventh Circuit has held that the age of inculpatory information is one element that magistrates should consider in determining whether probable cause exists. *United States v. Lamon,* 930 F.2d 1183, 1187–88 (7th Cir.1991). However, age is not the only factor, and "[i]f other factors indicate that the information is reliable and that the object of the search will still be on the premises, the magistrate should not hesitate to issue the warrant." *United States v. Batchelder,* 824 F.2d 563, 564 (7th Cir.1987). Further, the passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity. *Lamon,* 930 F.2d at 1188. Thus, when the affidavit recites ongoing criminal activity of a type likely to continue over a substantial period of time, the timeliness of the information in the affidavit is less important. *See Andresen v. Maryland,* 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627 (1976); *United States v. McNeese,* 901 F.2d 585, 596–597 (7th Cir. 1990); *United States v. Batchelder,* 824 F.2d at 564. However, if the information is too old, it can be considered stale and probable cause would no longer exist. *Sgro v. United States,* 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932).

The success of the defendant's argument rests upon the finding that the affiant's statements concerning the "controlled purchase" are untrue—a finding this court does not believe is supported by the evidence. The defendant argues that the "controlled purchase" recounted in the warrant affidavit did not in fact occur. However, the defendant has offered no support for such a position other than speculation and conjecture.

■ "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing. This does not mean 'truthful' in the sense

that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks,* 438 U.S. at 164–65, 98 S.Ct. at 2681. Since the defendant offers no support for the contention that the "controlled purchase" referred to in the warrant affidavit did not take place, the court must presume that the "controlled purchase" did in fact occur.

The warrant affidavit recited facts which established ongoing continuous criminal activity. According to the warrant affidavit, the MSOS had received complaints about narcotics being sold out of the address since 1991. Further, the affiant had received information from a confidential informant who had known the defendant for years and who informed the affiant that he could go to the address and purchase crack-cocaine from the defendant. Within forty-eight (48) hours of the preparation of the affidavit, the affiant set up a "controlled purchase" where a confidential informant was sent to the address with a "marked" twenty dollar bill and proceeded to purchase a quantity of a white, rock-like substance which allegedly was later determined to contain cocaine. Based upon this information, the affiant prepared the warrant affidavit and, subsequently, Judge Means issued the search warrant.

When information that is several years old is combined with information that was obtained during a seizure which is sufficiently fresh, there is ample evidence on which to support a finding of probable cause to believe that the evidence sought would still be located on the premises. *See United States v. Adames,* 56 F.3d 737, 748 (7th Cir.1995). In this case, the affiant had knowledge that the address was known to be related to trafficking of illegal drugs since 1991. Further, as a result of setting up the "controlled purchase" within 48 hours of the preparation of the warrant affidavit, the affiant gained fresh knowledge that cocaine was being sold out of the address by the defendant. Thus, based upon the relevant case law in the Seventh Circuit, the court finds that the information relied upon in the warrant affidavit was not stale and, thus, such a claim in the motion to suppress must fail.

### D. HEARSAY

 The defendant also claims that Judge Means incorrectly found probable cause for the issuance of the search warrant because the warrant affidavit was not based upon the affiant's personal knowledge. Thus, it appears that the defendant is attempting to argue that because the warrant affidavit was based on hearsay evidence, the warrant affidavit was flawed and the finding of probable cause was improper. Such a claim, however, is clearly without merit. The Government correctly states that Rule 41(c)(1) of the Federal Rules of Criminal Procedure provides that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part." Further, a finding of probable cause may even be based on hearsay from confidential informants. *United States v. Daccarett,* 6 F.3d 37, 56 (7th Cir.1993). Even if the bulk of the warrant affidavit was based on hearsay evidence conveyed by a confidential informant, such evidence alone will not flaw the affidavit. *United States v. Carmichael,* 489 F.2d 983, 986 (7th Cir.1973) (citing *United States v. Harris,* 403 U.S. 573, 580–81, 91 S.Ct. 2075, 2080–81, 29 L.Ed.2d 723 (1971)). For these reasons, this claim is now dismissed.

### E. BREADTH OF SEARCH

The defendant also challenges the propriety of the search conducted incident to the issuance of the search warrant. He claims that the City of South Bend Police Department engaged in a general, exploratory search of the premises in violation of the Fourth Amendment to the United States Constitution and Rule 41 of the Federal Rules of Criminal Procedure. The Government responds by arguing that the defendant has failed to explain how or why the search was too broad and that the defendant has offered no evidence to prove that the police searched for anything in a location in which they were not entitled to search.

The search warrant at issue in this case specifically listed the items to be seized.

Judge Means found that sufficient probable cause existed to believe that the following items could be found at the address in question: "crack-cocaine, materials used for packaging and distributing crack-cocaine paraphernalia, ledgers of narcotics transactions, records showing evidence of domain and control and United States currency bearing the following serial numbers: ... and any and all property related to narcotics trafficking." [6] Judge Means described the locations to be searched by the police as follows: "You are therefore commanded ... to enter into or upon the premise described herein, including each and every room therein contained, and diligently search for said items described herein." [7] As a result of the search, twenty-eight (28) different items were seized by the police.

The Fourth Amendment protects the right of people to be free from unreasonable searches. The search of a home for evidence of a crime is generally not unreasonable if it was conducted pursuant to a search warrant supported by probable cause. *United States v. Butler*, 71 F.3d 243, 248 (7th Cir.1995) (citing *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948)). The Fourth Amendment "categorically prohibits the issuance of any warrant except one particularly describing the ... things to be seized," *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987), for general search warrants leave too much discretion to the officers. *Andresen*, 427 U.S. at 480, 96 S.Ct. at 2748. A catch-all phrase will not invalidate a warrant as long as it sufficiently limits the discretion of the officers in executing the warrant. *United States v. Spears*, 965 F.2d 262, 277 (7th Cir.1992). The particularity requirement of the Fourth Amendment is to be applied with a practical measure of flexibility and only requires reasonable specificity. *United States v. Shoffner*, 826 F.2d 619, 631 (7th Cir.1987.)

The defendant seeks to suppress all of the evidence seized by the police as a result of the issuance of the search warrant now under attack. However, the defendant makes only conclusory allegations that the search was overbroad and in violation of the Fourth Amendment. The defendant has not offered to this court any evidence to support his claim that the search was merely exploratory and conducted without probable cause. The defendant does not contend that the police searched and seized items in areas not delineated by the warrant. However, in oral argument, the defendant claimed that the police pried a lock off a door inside the house to gain access into a room in order to conduct the search. In that room, the defendant alleges that the police seized weapons which were not items listed on the search warrant as objects related to drug trafficking that could be found on the premises.

The court does not find the present case to involve a situation where the police officers rummaged throughout the residence not knowing what they were looking for—they knew exactly what they were searching for. *See United States v. Nafzger*, 965 F.2d 213, 215 (7th Cir.1992). Officers in search of controlled substances certainly would not be expected to put the drugs back where they found them after viewing them. *United States v. Buckley*, 4 F.3d 552, 557 (7th Cir. 1993). Further, the use of a catch-all phrase to describe certain items in the search warrant will not invalidate the warrant so long as the phrase sufficiently limits the discretion of the officers in executing the warrant. *United States v. Spears*, 965 F.2d 262, 277 (7th Cir.1992). The terms "controlled substances" and "materials used for packaging and distributing crack-cocaine paraphernalia" are sufficiently specific on their face. *Id.* A search warrant delineating those items generally, in combination with named contraband, sufficiently limits an officer's discretion to execute the warrant. *See United States v. Reed*, 726 F.2d 339, 342 (7th Cir.1984). Thus, the seizure of the "rock-like" substances and other drug paraphernalia was proper under the Fourth Amendment.

**6.** See Defendant's Motion to Quash Search Warrant and Suppress Evidence and attached exhibits.

**7.** Id.

■ However, the court must further analyze the seizure of weapons during the search. The weapons which were seized by the police were not listed on the search warrant. However, the "plain view" doctrine authorizes the seizure of evidence not described in a warrant only if there is probable cause to believe that the seized items represent evidence of criminality. *Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983). The rationale for the plain view exception is that a plain view seizure "will not turn an initially valid (and therefore limited) search into a 'general' one. . . ." *Horton v. California*, 496 U.S. 128, 137–38, 110 S.Ct. 2301, 2308–09, 110 L.Ed.2d 112 (1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 469–71, 91 S.Ct. 2022, 2040–41, 29 L.Ed.2d 564 (1971)). Thus, the Seventh Circuit has held that a "logical nexus" must exist between seized but unnamed items and those items listed in the warrant to permit the seizure of the unnamed items within the "plain view" doctrine. *United States v. Jefferson*, 714 F.2d 689, 695 (7th Cir.1983).

■ Given the criminal nature of the drug operation contemplated by the warrant, the court finds that the seized firearms were sufficiently incriminating and, thus, that the necessary "logical nexus" exists in the present case. The Seventh Circuit has held that the seizure of weapons does not exceed the scope of valid search warrant since police may reasonably believe that the guns were involved in the alleged dealing of illegal drugs as evidenced by the items properly discovered during the search. *United States v. Reed*, 726 F.2d 339, 344 (7th Cir.1984); *see also, United States v. Alvarez*, 860 F.2d 801, 829–30 (7th Cir.1988) (recognizing firearms as common tools of the drug trade). Thus, the police officers' seizure of the weapons was proper under the doctrine of "plain view." As a result, the court now finds that all of the evidence seized by the police in the June 5, 1995, search of the address was properly taken under the mandates of the Fourth Amendment. Therefore, the defendant's claim that the search was overbroad is now dismissed.

## F. DETERMINATION OF PROBABLE CAUSE

In conclusion, the court finds that Judge Means determination that there was a fair probability that drugs and drug paraphernalia would be found in a particular place was proper under *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The search warrant and the affidavit of Officer Dennin offered in support were properly prepared and provided a sufficient basis upon which the judge could conclude that probable cause existed. Therefore, the court finds that based upon the totality of the circumstances, the June 5, 1995, search of the premises at 1614 South Fellows Street, located in South Bend, Indiana, was properly executed under the Fourth Amendment to the United States Constitution and, thus, the defendant's motion to quash the search warrant and suppress the evidence seized during that search is now **DENIED.**

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the court now: (1) **DENIES** the defendant's motion to dismiss the indictment, and grants the defendant leave to renew said motion at least ten (10) days in advance of trial; (2) **DENIES** the defendant's motion to quash the search warrant and suppress evidence; and (3) **DENIES** the Government's motion in limine **as MOOT** since an evidentiary hearing pursuant to *Franks v. Delaware, supra,* is not required in this case.

**IT IS SO ORDERED.**